HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ARKEMA INC, a Pennsylvania Corporation,
and GENERAL METALS OF TACOMA,
INC., a Washington Corporation,

                Plaintiffs,

       v.

ASARCO, INC., a New Jersey Corporation;
et. al,

                Defendants.

Case No. C05-5087 RBL

ORDER DENYING PLAINTIFFS'
MOTION TO COMPEL DISCOVERY

THIS MATTER is before the Court upon Plaintiffs' Motion to Compel discovery from Weyerhaeuser and Motion to Compel Discovery and find non-party Manke Lumber Company in contempt. Plaintiffs seek to have this Court compel both parties to produce all documents that were submitted in the "Wood Debris Group" (WDG) arbitration. Plaintiffs also seek an Order of Contempt against Manke Lumber for failing to object or seek a protective order prior to the deposition of Manke Lumber's records custodian. The Court, for the reasons stated below, denies the Motions to Compel discovery from both Weyerhaeuser and Manke and denies the Motion to find non-party Manke in Contempt.

I.    **Relevant Facts**

In 1997, Manke Lumber Company, Weyerhaeuser, and Louisiana-Pacific entered into a "Wood Debris Group" Agreement. The WDG Agreement provided for the sharing of costs during the investigation and remediation of wood debris contamination in the Neck and Upper Turning Basin (UTB) of the Hylebos Waterway in Tacoma. The work was done pursuant to an Agreed Order with Ecology under the Washington Model Toxics Control Act (MTCA). [Ex.4 to Ashcroft Decl. ¶1, 4]. The Agreement contains a confidentiality

provision regarding "information developed, generated, or otherwise produced in connection with this Agreement." [Dkt. #153, Ashcroft Decl. Ex. 4, ¶11]. The provision also states, "[i]t is agreed that the matters undertaken by the parties with respect to the Hylebos Waterway are undertaken as, and are intended to constitute, a joint defense in anticipation of litigation which could be expected with respect to this site . . ." [Id.] The WDG parties worked together for over four years investigating wood debris in the Hylebos and developing a Cleanup Study Report. However, they were unable to agree to on how to allocate their individual shares of the investigation costs. [Dkt. #154, Weyerhaeuser Response, 4:8-11]. Pursuant to their agreement, the parties submitted their dispute to arbitration which was conducted in June of 2002. [Dkt. #154, Hughes Decl., Ex. 1, ¶7].

In the current case, Plaintiffs sent discovery requests seeking various documents from Weyerhaeuser. As part of its response Weyerhaeuser produced a privilege log, referencing exhibits, deposition transcripts, and documents produced by the parties for the arbitration proceeding. [Dkt. #153, Ashcroft Decl., Ex. 1]. Weyerhaeuser claims the work product immunity and joint defense privilege as the bases for refusing to produce these documents. [Id.]

Manke Lumber is a not a party to the instant litigation. Plaintiffs sent a subpoena duces tecum to Manke on May 16, 2006, seeking all the documents produced in the WDG arbitration and scheduling a deposition for May 26, 2006. [Plaintiff Motion, 3:8-9]. Manke's designated records custodian testified at the deposition that Manke was withholding the documents because of the confidentiality agreement among WDG group and the confidentiality agreement related to the arbitration. [Ashcroft Decl., Ex. 3].

Plaintiff held discovery conferences with both Weyerhaeuser and Manke subsequent to the deposition. Weyerhaeuser did not change its position, but Manke did agree to produce all business-related documents submitted by Manke during the arbitration. [Dkt. #152, Plaintiff Motion, 3:18-21].

## II.     Motion to Compel Discovery from Weyerhaeuser

### A.     Privilege Claims

The burden of demonstrating the existence of an evidentiary privilege for discovery purposes rests on the party asserting the privilege. *Samuels v. Mitchell*, 155 F.R.D. 195, 197 (N.D. Cal. 1994). The joint defense privilege is an exception to the general rule that the attorney-client privilege is waived when

privileged information is disclosed to a third party.  *U.S. v. Agnello*, 135 F. Supp. 2d. 380, 382 (E.D.N.Y.

2001).  This privilege is meant to recognize the advantage of, or even the necessity for, an exchange or

pooling of information between attorneys representing parties sharing a common interest in litigation,

actual or prospective.  *Schacher v. American Academy of Ophthalmology, Inc.*, 106 F.R.D. 187, 192

(N.D. Ill. 1985).  Weyerhaeuser and Manke both assert the joint defense privilege with respect to the

documents at issue in this motion.

All parties agree that a joint defense privilege is formed when three elements are met: "1) the

communications were made in the course of joint defense effort; 2) the statements were designed to further

the joint defense effort; and 3) the privilege has not been waived."  *Durkin v. Shields (In Re Imperial Corp.

of Am.)*, 167 F.R.D. 447, 455 (S.D. Cal. 1995).  The WDG Agreement clearly states that the parties

involved were working together in a joint defense effort, "in anticipation of litigation," in order to allocate

costs among themselves. The arbitration provision states, "[i]n the event that the parties are unable to

decide on the final allocation, they agree to submit the final allocation of the costs covered by this

Agreement to binding arbitration." [Ashcroft Dec., Ex. 4, ¶9].

Plaintiff asserts that the WDG arbitration was an adversarial effort on each of the parties' part to

shift more of the costs to the other parties, and thus was a waiver of the joint defense privilege. [Dkt.#156,

Plaintiff Motion, 3].   Yet the arbitration was just one of many steps taken by all three parties to come to a

final agreement as to the allocation of the costs, and statements made during the arbitration were actually

designed to further their joint defense effort.  This arbitration was part of their "on-going and joint effort to

set up a common defense strategy." *Griffith v. Davis*, 161 F.R.D. 687 (C.D. Cal. 1998).  The joint defense

privilege is not limited to situations in which the positions of the parties are compatible in all respects.

*United States v. McPartlin*, 595 F.2d 321, (7th Cir. 1979) (citing the Advisory Committee's Note to

proposed Rule 503(b) of the Federal Rules of Evidence).

There is a strong public interest in preserving the confidentiality of settlement or arbitration proceedings, but this must be balanced with the public and private interest in affording a litigant the opportunity to broadly discover information in support of its case. *Hasbrouck v. BankAmerica Housing Services*, 187 F.R.D. 453, 459 (N.D.N.Y. 1999). Especially in the context of environmental litigation, public policy supports encouraging settlement out of court as a more efficient solution to this heavily litigated area of law. Parties in this case maintained their common interest of determining division of cleanup costs among themselves and did not meet "purely on an adversary basis." *United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979). This type of disclosure to parties with a common interest or "friendly litigants" is not sufficient to waive the joint defense privilege. *Western Fuels Association, Inc. v. Burlington Northern Railroad Company,* 102 F.R.D. 201, 203 (D. Wyo. 1984).

### B.        Plaintiffs Have Not Demonstrated a Compelling Need for the Arbitration Materials

The Court is not persuaded by the Plaintiffs' judicial estoppel argument that this information is discoverable in order to prevent Defendants from taking inconsistent positions in the arbitration and this lawsuit. Defendants have produced the findings of the arbitrator which state both the arguments of all parties involved and the final conclusions of the proceeding.

### III.    Motion to Compel Discovery and Find Non-Party Manke Lumber in Contempt

Manke argues that Plaintiffs failed to comply with the requirements of Rule 45 in serving the subpoena and that Manke fulfilled its duties under Rule 45(c) and (d). Alternatively, Manke asserts that it has provided an "adequate excuse" as required by Rule 45(e). Plaintiffs assert that because Manke objected orally to document production at 1:32 p.m. rather than before 1:30 p.m on the day of the deposition, Manke failed to object in written form "before the time specified for compliance," and thus waived its privilege claim. Fed. R. Civ. P. 45(c)(2)(B).

Plaintiffs in their Reply urge the court not to "elevate form over substance" in the absence of

showing real prejudice. [Dkt. #152, Plaintiff Reply, 5:11-12]. The Court heeds this advice and finds that the parties' squabble over form is not dispositive in this instance. Because Manke did object, and the joint defense privilege does exist regarding documents produced for the arbitration, the Court shall not require Manke to produce privileged documents to the Plaintiffs.

**IV.    Conclusion**

The Court finds that a joint defense privilege does exist for the documents referenced in the privilege log produced for the arbitration and therefore the Plaintiffs' Motion to Compel discovery from Weyerhaeuser is DENIED. The Court also DENIES both Plaintiffs Motion to Compel discovery from Manke Lumber Company and the Motion to find non-party Manke Lumber Company in Contempt.

IT IS SO ORDERED.

Dated this 27th day of June, 2006.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE