HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ARKEMA, INC., a Pennsylvania corporation and GENERAL METALS OF TACOMA, INC., a Washington corporation,

Plaintiffs,

v.

ASARCO, INC., a New Jersey corporation, et al.,

Defendants.

Case No. C05-5087RBL

ORDER

Defendant, Weyerhaeuser Company, brings this motion for partial summary judgment [Dkt. #198] seeking confirmation of its belief that wood is not a hazardous substance under either CERCLA or MTCA. The Court has reviewed the materials submitted by the parties and the oral arguments of counsel and for the reasons stated below now DENIES WITHOUT PREJUDICE the defendant's motion.

Plaintiffs Arkema, Inc. and General Metals of Tacoma, Inc., together the Head of the Hylebos Clean-up Group (HHCG), seek contribution from Weyerhaeuser for costs expended by HHCG cleaning up portions of the Hylebos Waterway. The legal bases for the contribution claim are to be found at section 113 of the Comprehensive Environmental Response and Liability Act, 42 U.S.C. §9613 (CERCLA) and the Model Toxics Control Act at RCW 70.105D.080 (MTCA).

Weyerhaeuser owns a log sort yard on the Hylebos Waterway from which it exports raw logs. The facility is known as the Tacoma Export Facility (TEF). For purposes of the subject motion, the essential facts about operations at TEF are adequately described in defendant's memorandum.

1. The TEF receives raw logs by rail, truck, log raft, and barge, and loads them onto ships for export to overseas markets.

2. Raw logs received at the TEF come from various forests in the Pacific Northwest and British Columbia. The trees are harvested, de-limbed, and transported as raw logs to the TEF.

3. Since 1978, most raw logs being shipped from the TEF have been de-barked. Except for de-barking and some very occasional minor trimming, raw logs are not processed at the TEF. TEF raw logs are not considered a manufactured product. TEF raw logs are not treated, painted, or stained.

4. The TEF handles some raw logs by water. The TEF receives log rafts in the TEF's log pocket area, which is the area of water surrounding the TEF's paved log ramp that extends into the Hylebos Waterway west of the TEF's dock. The raw logs received into the TEF log pocket are taken out of the water and placed in the upland area.

5. When there is not enough storage space in the upland portion of the TEF, raw logs can also be put into the water and formed into log rafts. The raw logs are bundled, placed into the water via the paved log ramp, and formed into rafts for temporary storage or direct loading onto ships.

6. Plaintiffs allege that during log rafting and log handling activities such as described in paragraphs 4-5 above, wood debris has historically been generated in the form of bark, chips, chunks, splinters, and occasionally whole logs, which have become waterlogged and sunk in the Hylebos Waterway.

Memorandum in Support of Motion, p.2.

When the head of the waterway was dredged by the HHCG, pursuant to a CERCLA Administrative Order on Consent (AOC) Decree, wood debris comprised a significant portion (approximately 20%) of the material removed. The wood debris removed by the HHCG was mixed with

heavy metals and other hazardous substances released into the waterway during decades of industrial activity along and within the Hylebos.

Understandably, regulators and other potentially liable parties (PLPs) wanted Weyerhaeuser to pay its fair share of the remediation costs at the Hylebos. Along with other forest products companies, Weyerhaeuser formed the Wood Debris Group (WDG) and negotiated with the Washington State Department of Ecology (DOE) to dredge that portion of the head of the Hylebos where wood debris had not mixed with, or become co-located with, high levels of toxic chemicals. The Wood Debris Group dredged the wood debris in their area of responsibility and deposited those dredge spoils in a deep water disposal site.

In the meantime, the HHCG dredged those portions of the waterway contaminated with chemicals and other substances which were clearly hazardous substances under CERCLA and MTCA. In this contribution action, HHCG primarily seeks to recover the cost to dredge and dispose of wood debris found in the area of the Hylebos which it remediated.

Weyerhaeuser argues that in its natural and untreated form, wood is not a hazardous substance and that Weyerhaeuser cannot be liable in a contribution action for the release or threatened release of a hazardous substance.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

CERCLA Hazardous Substance

To establish a prima facie claim for contribution under CERCLA, plaintiffs must show that: (1) the defendant falls within one of four classes of persons subject to CERCLA's liability provisions under §107(a); (2) the waste disposal site constitutes a "facility"; (3) a "release" or "threatened release" of a "hazardous substance" from the facility has occurred; and (4) such release or threatened release will require the expenditure of response costs that are consistent with the national contingency plan. *California ex rel. California Dept. of Toxic Substances Control v. Campbell*, 319 F.3d 1161, 1165 (9th Cir. 2003). Defendants' current motion focuses on the third necessary element of a contribution claim.

CERCLA defines "hazardous substance" as: (A) any substance designated pursuant to Section 311(b)(2)(A) of [Title 33], (B) any element, compound, mixture, solution or substance designated pursuant to Section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to Section 3001 of the Solid Waste Disposal Act [42 U.S.C. §69211], any toxic pollutant listed under Section 1317(a) of Title 33, (E) any hazardous air pollutant listed under Section 112 of the Clean Air Act, and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to Section 2606 of Title 15.

The parties appear to agree that wood is not listed as a hazardous substance in any statute referred to above or in any related regulation. Weyerhaeuser asserts that because wood is a homogeneous, naturally-occurring substance comprised of cellulose, hemicellulose and lignin, none of which are listed as a hazardous substance, there is no constituent part of wood released into the environment during the decomposition process that is a "hazardous substance." It argues that although treated wood and wood mixed with hazardous wastes may be a hazardous substance, wood in its natural, untreated form is not.

Plaintiffs argue that the EPA and DOE agree that wood waste causes the release or threatened release of a hazardous substance and is therefore subject to their jurisdiction under CERCLA and MTCA. According to documents submitted by the parties, the principle environmental concerns about wood debris in a waterway such as the Hylebos is the generation of ammonia or hydrogen sulfide during the decomposition process. Weyerhaeuser counters by alleging that ammonia and hydrogen sulfides are not constituent elements of wood released during decomposition but rather the waste by-product of the microbial "critters" that devour the wood during decomposition.

The parties have submitted case law which bracket but do not directly hit the issue before this Court.  In *United States v. Serafini*, 750 F. Supp. 168 (1990) the District Court ruled that a manufacturer which had arranged for disposal at a landfill of an inert solid that did not contain any substances listed on the CERCLA hazardous substances list was not liable for contribution costs incurred by the government in cleaning the landfill.  There, the hazardous substance was not created until the discarded material was burned at the landfill.  In *United States v. New Castle County*, 769 F. Supp. 591 (D. Del. 1991) the Court focused on the potential for the discarded material to "release" or "generate" hazardous substances through some chemical reaction.  The Court in *New Castle* held that if a CERCLA defendant's waste is a non-hazardous substance, a plaintiff must show that the waste is capable of generating or releasing a hazardous substance at the site in order to show that the waste "contains" a hazardous substance within the meaning of CERCLA.  Plaintiff must further show that it is more probable than not that the hazardous substance will be likely to migrate or dissociate from the non-hazardous substance.  *Id*. at 597.

Given the facts and law presented to it, the Court is not yet satisfied that wood debris "contains" a hazardous substance.  Summary Judgment on the issue is therefore premature.

Plaintiffs also claim that Weyerhaeuser's expert, Dr. Teri Floyd, acknowledges that when wood debris degrades it produces hazardous waste compounds such as phenol, methyl phenol, and 2-methyl phenol.  Others say that phenols are "associated" with wood debris.  It is unclear to the Court on the record before it whether these listed hazardous substances are in the wood and <u>released</u> during decomposition or <u>generated</u> by independent forces acting on the wood as it breaks down.  This will be an issue the parties should address at trial.

Plaintiffs further contend that the wood stored and moved at the TEF was contaminated by PAHs eminating from a variety of airborne sources, most notably the Weyerhaeuser rolling stock.  At oral argument, Weyerhaeuser asserted the "tailpipe emission exemption" to CERCLA liability which purports to exempt from liability contaminants eminating from among others, internal combustion engines. 42 U.S.C. §9601(22)(b). The cases provided to the Court involving the "tailpipe emission exemption" all refer to the provision in dicta and no case has been provided to the Court on the question of liability for the re-release of PAHs when mixed with another substance, such as wood.  Additional briefing on this subject

would be helpful at the time of trial.[1]

MTCA Hazardous Substance

The question of wood waste as a MTCA hazardous substance raises many of the same issues addressed under CERCLA. MTCA incorporates the hazardous substances under CERCLA. RCW 70.105 D.020(7)(c). In addition, MTCA defines "dangerous wastes" as any discarded, useless, unwanted or abandoned substances . . . which are disposed of in such quantity or concentration as to pose a substantial present or potential hazard to human health, wildlife, or the environment <u>because</u> such wastes or constituents or combinations of such wastes:

> (a) Have short-lived, toxic properties that may cause death, injury, or illness or have mutagenic, teratogenic, or carcinogenic properties; or
>
> (b) Are corrosive, explosive, flammable, or may generate pressure through decomposition or other means.

RCW 70.105.010(5). This definition again begs the question of whether the hazardous substances of concern with regard to wood are released from the wood or generated by other entities acting upon the wood.

Finally, plaintiffs allege that the Sediment Management Standards provide authority for cleaning up "deleterious substances" on a case-by-case basis. Plaintiffs argue that the Sediment Management Standards comply with one definition of hazardous substance set forth in MTCA:

> "Any substance or category of substances, including solid waste decomposition products, determined by the director <u>by rule</u> to present a threat to human health or the environment if released into the environment.

RCW 70.105D.020(7)(e). Plaintiffs claim the adoption of the Sediment Management Standards comply with the "rule" requirement because only rules adopted through the rule-making procedure can be published in the WAC. *Association of Washington Businesses v. Dept. of Revenue,* 155 Wn.2d 430, 443 (2005). Plaintiffs' use of these standards goes too far, however. The statute contemplated rule-making that would provide notice to the public and opportunity for comment <u>before</u> the listing of a hazardous substance. No such listing of wood as a hazardous substance by rule has ever been proposed. That wood debris may be regulated as a "deleterious substance" does not compel a finding that wood is a "hazardous

---

[1] The Court has now reviewed the post-argument submittals of the parties and acknowledges that this indeed may be an issue of first impression. Nevertheless, the Court wants to have a more comprehensive understanding of the science surrounding the issue before ruling.

substance" for which contribution liability attaches under MTCA

## CONCLUSION

This case is scheduled for a trial before the bench in May 2007. The Court is not now prepared on the record before it is to decide whether wood is or is not a hazardous substance.

The Court will therefore decide the issue, if necessary, as a part of its findings of fact and conclusions of law at the end of trial.

Defendant's motion is **DENIED WITHOUT PREJUDICE.**

DATED this 5th day of April, 2007.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE